IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROSEMARY NELSON, Individually and as Administratrix of the Estate of EDWIN R. NELSON, JR., Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>ERIE COUNTY, PENNSYLVANIA, as owner and operator of PLEASANT RIDGE MANOR, a skilled nursing facility,<br><br>Defendant. | Civil Action No.: 1:22-cv-234 |

**PLAINTIFF'S COMPLAINT**

AND NOW, comes the Plaintiff, Rosemary Nelson, Individually and as the Administratrix of the Estate of Edwin R. Nelson, Jr., Deceased, by and through her undersigned counsel, Elizabeth A. Chiappetta, Esquire; Allison H. Greene, Esquire; and the law firm of Robert Peirce & Associates, P.C. and files this Complaint for Defendant's violation of duties imposed upon it under the Omnibus Budget Reconciliation Act of 1987 ("OBRA"); the Federal Nursing Home Reform Act ("FNHRA"); 42 U.S.C. §1396r, *et al.*; the implementing regulations found at 42 C.F.R. §483, *et al.*; and for violations of the Constitution of the United States of America under Amendment Fourteen, enforceable under 42 U.S.C. §1983, against Defendant Erie County, Pennsylvania, as owner and operator of Pleasant Ridge Manor, a skilled nursing facility.

**Nature of Action**

1. This is a proceeding under 42 U.S.C. §1983 to remedy deprivations of rights under the Omnibus Budget Reconciliation Act of 1987; the Federal Nursing Home Reform Act;

1

the Federal Nursing Home Regulations as found at 42 C.F.R. §483, which amplify the aforementioned statutes; and the Constitution of the United States of America.

### Jurisdiction and Venue

2.  As the instant case presents issues of federal law, jurisdiction is proper in this forum as a federal question, pursuant to 28 U.S.C §1331.

3.  Venue lies within this judicial district, since all of the actions complained of herein occurred within the Western District of Pennsylvania.

### Parties

4.  Plaintiff Rosemary Nelson is an adult who resides at 4006 Greenway Drive, Erie, Erie County, Pennsylvania 16506.

5.  Rosemary Nelson is the wife of Plaintiff's Decedent Edwin R. Nelson, Jr.

6.  Edwin R. Nelson, Jr. died on December 3, 2021.

7.  Rosemary Nelson was appointed as the Administrator of the Estate of Edwin R. Nelson, Jr. by the Register of Wills of Erie County on June 7, 2022.

8.  Plaintiff brings this action as the personal representative of the Estate of Edwin R. Nelson, Jr., on her own behalf, and on behalf of all those entitled by law to recover damages for the wrongful death of Edwin R. Nelson, Jr.

9.  The name and addresses of all persons legally entitled to recover damages for the wrongful death, pursuant to the Pennsylvania Wrongful Death Act of 42 Pa. Const. Stat. § 8301, which these causes of action borrow from, of Edwin R. Nelson, Jr. and their relationship to him as follows:

| **Name:** | **Address:** | **Relationship:** |
|---|---|---|
| Rosemary Nelson | 4006 Greenway Drive<br>Erie, PA 16506 | Wife |
| Linda E. Nelson | 32540 Greenwood Loop<br>Wesley Chapel, FL 33545 | Daughter |
| Eric Nelson | 397B Lowell Street<br>Peabody, MA 01960 | Son |
| Timothy Nelson | 3111 Raspberry Street<br>Erie, PA 16508 | Son |

10. Defendant Erie County, Pennsylvania is a governmental agency with its governmental offices located at Office off The County Clark, Erie County Courthouse, 140 W 6th St., Erie, Erie County, Pennsylvania 16417.

11. Defendant Erie County, Pennsylvania, as a governmental agency, at all times relevant hereto, was acting under the color of state law.

12. Defendant Erie County, Pennsylvania owns and operates Pleasant Ridge Manor ("Pleasant Ridge"), which is a skilled nursing facility located at 8300 West Ridge Road, Girard, Erie County, Pennsylvania 16417.

13. As Pleasant Ridge Manor is owned and operated by Defendant Erie County, Pennsylvania, Defendant is proper party Defendant to this matter.

14. At all relevant times hereto, Defendant Pleasant Ridge Manor operated as a "long-term care nursing facility" as that term is defined in 35 P.S. §448.802(a).

15. Accordingly, Defendant Pleasant Ridge Manor is a "healthcare provider" as that term is defined in 40 P.S. §1303.503, and Plaintiff is asserting a professional liability claim against Defendant.

16. At all times relevant hereto, Defendant Pleasant Ridge Manor operated as a "skilled nursing facility" as that term is defined in 42 U.S.C. §1395i-3.

17. At all times relevant hereto, Pleasant Ridge Manor was acting under the control of Erie County, Pennsylvania, and by and through its duly authorized agents and/or employees who then and there acting within the course and scope of their employment.

18. Defendant Erie County is a county government organized and existing under the laws of this Commonwealth of Pennsylvania. At all times relevant hereto, Defendant Erie County, acting through Pleasant Ridge Manor, was responsible for the policies, practices, supervision, implementation, and conduct of all matters pertaining to Pleasant Ridge Manor and was responsible for the appointment, training, supervision, and conduct of all Pleasant Ridge Manor personnel. In addition, at all relevant times, Defendant Erie County was responsible for enforcing the rules of Pleasant Ridge Manor facility and for ensuring that personnel employed in the facility obey the Constitution and laws of the United States and of the Commonwealth of Pennsylvania.

19. At no point has suit been brought by or on behalf of Edwin R. Nelson, Jr. either for his personal injuries nor for his wrongful death.

20. At all times relevant hereto, Plaintiff's Decedent was a recipient of Medicare benefits pursuant to 42 U.S.C.A. §1396, *et. seq.*

## Statement of Claims

21. All preceding paragraphs of this Complaint are incorporated herein, as if set more fully at length.

22. Edwin R. Nelson, Jr. (herein "Mr. Nelson") was 97 years old when he was admitted to Pleasant Ridge Manor on November 5, 2021 for long-term skilled nursing services.

23. Mr. Nelson had the following pre-existing conditions at the time of his admission: coronary artery disease, atrial fibrillation, unspecified dementia without behaviors, hyperglycemia, transient ischemic attack, cerebral infarction without residual defect, and a history of falls at home.

24. Pleasant Ridge staff noted at the time of admission that Mr. Nelson had mild cognitive impairment and his skin was described as "dry and fragile."

25. At admission, Pleasant Ridge ordered the following medications for Mr. Nelson: Eliquis, diltiazem, and acetaminophen

26. Pleasant Ridge staff noted that Mr. Nelson was at high risk for falls due to his multiple diagnoses and his history of falls at home.

27. On November 5, 2021, the day of his admission, Pleasant Ridge staff performed a Fall Risk Assessment of Mr. Nelson.

28. During this Fall Risk Assessment, Pleasant Ridge staff again noted that Mr. Nelson exhibited intermittent confusion, had suffered approximately 1-3 falls in the past three months, was wheelchair bound, had poor vision, and had an increased risk for falls due to the medications he was on.

29. Following the Fall Risk Evaluation, Mr. Nelson's fall risk score was 16, indicating he was "at risk" for falls.

30. Despite the foregoing, Pleasant Ridge's only fall prevention tool to be included in Mr. Nelson's Care Plan was "call bell within reach."

31. Pleasant Ridge, at the time of Mr. Nelson's admission, did not provide him with any chair alarms, bed alarms, personal sensor alarms, fall mats, or any other interventions to protect him from falling and/or injury.

32. Only two days after admission, on November 7, 2021, Mr. Nelson suffered his first fall at Pleasant Ridge.

33. Pleasant Ridge staff found Mr. Nelson in the bathroom, seated on the floor next to the toilet.

34. According to Pleasant Ridge records, Mr. Nelson fell while attempting to self-transfer from his wheelchair to his toilet.

35. Following this event, Pleasant Ridge staff requested Mr. Nelson have a chair pressure alarm.

36. Additionally, there is no record that Pleasant Ridge staff performed a full physical and/or neurological evaluation of Mr. Nelson immediately after his fall; and staff did not perform a post-fall fall risk assessment or create a toileting schedule for Mr. Nelson.

37. On November 12, 2021, Pleasant Ridge staff performed a Braden Scale assessment of Mr. Edwin.

38. A Braden Scale assessment demonstrates the risk of a patient acquiring a pressure ulcer or other related skin injury.

39. Despite noting at admission that Mr. Nelson's skin was dry and fragile, Pleasant Manor staff noted that Mr. Nelson was at low risk for pressure ulcers and clinically suggested turning and repositioning him every two hours.

40. Four days after Mr. Nelson's Braden Scale assessment, on November 16, 2021, Pleasant Ridge staff noted that Mr. Nelson had developed a Stage II pressure ulcer on his left heel measuring approximately 2.5 x 2.5 x 0.1 cm.

41. On November 16, 2021, Pleasant Ridge staff initiated wound care treatment, ordered Bunny Boots, and emphasized turning and repositioning every two hours to Mr. Nelson.

42. The same day, on November 16, 2021, Mr. Nelson suffered his second fall at Pleasant Ridge.

43. Pleasant Ridge staff noted that Mr. Nelson had fallen while trying to ambulate in the TV room, despite being wheelchair bound.

44. Pleasant Ridge records indicate that Mr. Nelson's chair alarm was sounding when staff found him lying on the floor.

45. Pleasant Ridge staff performed a physical and neurological evaluation of Mr. Nelson and noted he had a change in mental status.

46. Pleasant Ridge staff completed a Fall Risk Evaluation following the incident and updated Mr. Nelson's Care Plan to include a toileting schedule and scheduled voiding.

47. However, no new alarms nor any type of fall mats were ordered.

48. On November 17, 2021, Pleasant Ridge records indicate that Mr. Nelson's wife, Rosemary, requested he be provided with a wheelchair seatbelt due to his recent falls.

49. Pleasant Ridge records further indicate that Mr. Nelson was able to release seatbelt with max verbal cues and visual cues, as such, Pleasant Ridge did not provide Mr. Nelson with a seatbelt.

50. On December 3, 2021, less than a month after it was documented, Mr. Nelson's left heel pressure wound was categorized as Stage III and measured 2.1 x 1.5 x 0.2 cm.

51. On this date, December 3, 2021, at approximately 11:43 a.m., Mr. Nelson suffered his third and final fall at Pleasant Manor.

52. Mr. Nelson was being pushed in his wheelchair by Pleasant Ridge staff when he fell forward out of his chair and violently struck his head.

53. According to Pleasant Ridge records, Mr. Nelson had "catapulted out of his wheelchair after he planted his feet on the ground."

54. While Mr. Nelson was lying on the floor, his wife entered the facility and saw him face up on the floor with his wheelchair behind his head.

55. Pleasant Ridge staff claimed to have performed neurological checks and a full body assessment after the fall.

56. Pleasant Ridge staff noted that Mr. Nelson appeared stable, was alert, was able to move all extremities, but sustained an abrasion measuring 1.5 x 1.5 x 0.1 cm on his forehead.

57. Mr. Nelson was also rubbing his temple in pain.

58. Pleasant Ridge staff subsequently assisted Mr. Nelson back to his wheelchair and placed bilateral footrests on his wheelchair as a preventative measure against fall and injury.

59. Pleasant Ridge staff checked Mr. Nelson's vital signs at approximately 12:00 p.m., 12:15 p.m., and 12:30 p.m., and noted no abnormalities.

60. However, Pleasant Ridge did not transfer Mr. Nelson to a hospital for evaluation - despite him the fact that he violently struck his head.

61. In fact, Pleasant Ridge staff encouraged Mr. Nelson and his wife to sit in the dining room with tea.

62. Less than two hours later, at around 1:00 p.m., Mr. Nelson became unresponsive.

63. Mr. Nelson's pupils had become fixed and his respirations became labored.

64. Pleasant Ridge Manor discussed with Mrs. Nelson whether to transfer Mr. Nelson to the hospital for evaluation, or to continue comfort measures at the facility.

65. While these conversations were ongoing, Mr. Nelson lost carotid pulse.

66. Pleasant Ridge records provide that CPR was initiated and these attempts to resuscitate Mr. Nelson were unsuccessful.

67. However, CPR was not ever performed on Mr. Nelson, contradicting Pleasant Ridge's own records.

68. Mr. Nelson died at 1:50 p.m. on December 3, 2020 at Pleasant Ridge.

69. Mr. Nelson's cause of death was described on his Death Certificate as "suspected closed head injury" and "fall."

## COUNT I

## Deprivation of Civil Rights Enforceable Via 42 U.S.C. §1983

## SURVIVAL

70. All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

71. At all times relevant to this Complaint, Pleasant Ridge Manor was acting under the color of state law and as an agent of the Commonwealth of Pennsylvania.

72. Defendant is bound generally by the 1987 Omnibus Budget Reconciliation Act (OBRA) and the Federal Nursing Home Reform Act (FNHRA) which was contained within the 1987 OBRA. See: 42 U.S.C. §1396r. Defendant is also bound generally by the OBRA/FNHRA implementing regulations found at 42 C.F.R. §483, et seq., which served to further define and amplify specific statutory rights set forth in the above-mentioned statutes.

73. The statutes in question, as amplified and further defined by the detailed regulatory provisions, create rights which are enforceable pursuant to 42 U.S.C. §1983, as the language of these regulations and statutory provisions clearly and unambiguously creates those rights.

74. Defendant, in derogation of the above statutes and regulations, and as a custom and policy, failed to comply with the aforementioned regulations as follows:

   a. By failing, as a custom and policy, to develop and implement written Policies and Procedures that prohibited the mistreatment, deliberate indifference and abuse of residents such as Edwin R. Nelson, Jr., as required by 42 C.F.R. §483.12 and 42 U.S.C. §1396r(b)(1)(A);

b. By failing, as a custom and policy, to care for patients, including Edwin R. Nelson, Jr., in a manner that promoted maintenance or enhancement of his life, as required by 42 C.F.R. §483.15 and 42 U.S.C. §1396r(b)(1)(A);

c. By failing, as a custom and policy, to promote the care of patients, including Edwin R. Nelson, Jr., in a manner and in an environment that maintained or enhanced his dignity as required by 42 C.F.R. §483.15 and 42 U.S.C. §1396r(b)(1)(A);

d. By failing, as a custom and policy, to develop a comprehensive Care Plan for patients, including Edwin R. Nelson, Jr., as required by 42 C.F.R. §483.20 and 42 U.S.C. §1396r(b)(2)(A);

e. By failing, as a custom and policy, to provide patients, including Edwin R. Nelson, Jr., the necessary care and services to allow him to attain or maintain the highest, practicable, physical, mental and psychosocial well-being, as required by 42 C.F.R. §483.25 and 42 U.S.C. §1396r(b)(3)(A);

f. By failing, as a custom and policy, to periodically review and revise a patient's or resident's written Plan of Care by an interdisciplinary team after each of the resident's or patient's assessments as described within 42 U.S.C. §1396r(b)(3)(A) and as required by §1396r(b)(2)(C);

g. By failing, as a custom and policy, to conduct an assessment of a patient or resident, such as Edwin R. Nelson, Jr., as per 42 U.S.C. §1396r(b)(3)(A), promptly after a significant change in the resident's physical or mental condition, as required by 42 U.S.C. §1396r(b)(3)(C)(i)(ii);

h. By failing, as a custom and policy, to use the results of the assessments required as described above in developing, reviewing and revising the resident's Plan of Care, specifically Edwin R. Nelson, Jr.'s Plan of Care, as required by 42 U.S.C. §1396r(b)(3)(D);

i. By failing, as a custom and policy, to ensure that patients or residents, including Edwin R. Nelson, Jr., were provided medically related social services to attain or maintain the highest practicable physical, mental and psychosocial well-being as required by 42 C.F.R. §483.25 and 42 U.S.C. §1396r(b)(4)(ii);

j. By failing, as a custom and policy, to ensure that an ongoing program, directed by a qualified professional, of activities designed to meet the interests and the physical, mental and psychosocial well-being of each resident or patient, including Edwin R. Nelson, Jr., as required by 42 C.F.R. §483.25 and 42 U.S.C. §1396r(b)(4)(A)(v);

k. By failing, as a custom and policy, to ensure that the personnel responsible for the care of patients were properly certified and/or re-certified as being qualified to perform necessary nursing services as required by 42 U.S.C. §1396r(b)(4)(B);

l. By failing, as a custom and policy, to provide sufficient nursing staff to provide nursing and related services that would allow patients or residents, including Edwin R. Nelson, Jr., to attain or maintain the highest practicable, physical, mental and psychosocial well-being, as required by 42 C.F.R. §483.30 and 42 U.S.C. §1396r(b)(4)(C);

m. By failing, as a custom and policy, to maintain clinical records on all residents, including Edwin R. Nelson, Jr., including but not limited to the Plans of Care and resident's assessment, as required by 42 U.S.C. §1396r(b)(6)(C);

n. By failing, as a custom and policy, to ensure that the Pleasant Ridge facility was administrated in a manner that enabled it to use its resources effectively and efficiently to allow patients or residents, including Edwin R. Nelson, Jr., to maintain or attain their highest practicable level of physical, mental and psychosocial well-being as required by 42 C.F.R. §483.75, 42 U.S.C. §1396r(d)(A) and 42 U.S.C. §1396r(d)(1)(C);

o. By failing, as a custom and policy, to ensure that the administrator of Defendant Pleasant Ridge met the standards established under 42 U.S.C. §1396r(f)(4) as required by 42 U.S.C. §1396r(d)(1)(C);

p. By failing, as a custom and policy, to ensure that Defendant Pleasant Ridge was complying with federal, state, local laws, and accepted professional standards which apply to professionals providing services to residents, including Edwin R. Nelson, Jr., and in operating such a facility as Defendant Pleasant Ridge, as required by 42 U.S.C. §1396(d)(4)(A); and,

11

q. By failing, as a custom and policy to ensure that Defendant Pleasant Ridge's administrator and director of nursing properly monitored and supervised subordinate staff thereby failing to ensure the health and safety of residents or patients, including Edwin R. Nelson, Jr., in derogation of 42 C.F.R. §483.75 and 42 U.S.C. §1396(a)(1)(A).

75. As a proximate result of Defendant's actionable derogation of its regulatory and statutory responsibilities as above-described, Plaintiff's Decedent was injured as previously referenced, and suffered pain, distress, surgery, and death as a result of Pleasant Ridge Manor's poor care and treatment, which allowed his to suffer harm as described herein. As such, Plaintiff has suffered, and is entitled to recover the following damages, as well as an award of reasonable counsel fees, pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988:

a. Pain, suffering, inconvenience, anxiety and nervousness of the Plaintiff's Decedent until the time of his death;

b. Hospital, medical, surgical and nursing expenses incurred on Plaintiff's Decedent's behalf;

c. Other losses and damages permitted by law; and,

d. Any other damages as the Court sees fit to award.

WHEREFORE, the Plaintiff, Rosemary Nelson, Individually and as the Administratrix of the Estate of Edwin R. Nelson, Jr., Deceased, demands damages of the Defendant Erie County, Pennsylvania in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

## COUNT II

### Deprivation of Civil Rights Enforceable Via 42 U.S.C. §1983

### WRONGFUL DEATH

76. All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

77. As a proximate result of Defendant's actionable derogation of its regulatory and statutory responsibilities as above-described, Plaintiff's Decedent was injured as previously referenced, and suffered pain, distress and death as a result of the poor care and treatment he received.

78. As such, Plaintiff has suffered, and is entitled to recover the following damages, as well as an award of reasonable counsel fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988:

    a. Money for funeral and estate expenses incurred because of the death of Edwin R. Nelson, Jr.;

    b. Damages for the lost services, assistance, guidance, counseling, and companionship of Edwin R. Nelson, Jr.;

    c. Financial support and all pecuniary benefits which would have been received from the Decedent;

    d. The expenses of administration; and,

    e. Other losses and damages permitted by law.

WHEREFORE, the Plaintiff, Rosemary Nelson, Individually and as the Administratrix of the Estate of Edwin R. Nelson, Jr., Deceased, demands damages of the Defendant Erie County, Pennsylvania in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit, and attorney's fees.

## COUNT III

**Violations of the United States of America's Constitution Under Amendment Fourteen for Injury to Human Dignity Enforceable Via 42 U.S.C. §1983**

**SURVIVAL**

79. All of the preceding paragraphs of the within Complaint are incorporated herein as if set forth more fully at length.

80. During the residency of Edwin R. Nelson, Jr., Defendant deliberately and/or with deliberate indifference failed to properly care for him, causing him to suffer an injury to human dignity.

81. Specifically, Defendant allowed Edwin R. Nelson, Jr. to remain in a state that was hazardous to his health and well-being.

82. These violations interfere with Edwin R. Nelson, Jr.'s rights under the Fourteenth Amendment to the United States of America's Constitution.

83. During its treatment of Edwin R. Nelson, Jr., Defendant acted pursuant to a state right or privilege, and as such was a state actor.

84. While a patient at Defendant Pleasant Ridge, Edwin R. Nelson, Jr. had a serious medical need, and the deliberate and deliberately indifferent acts and omissions of the staff at Defendant Pleasant Ridge indicated deliberate indifference to Mr. Nelson's medical needs.

85. Edwin R. Nelson, Jr. was dependent upon Defendant Pleasant Ridge and its staff for a significant amount of his activities of daily living, nursing care, and treatment needs.

86. Defendant and its staff were deliberately indifferent to Edwin R. Nelson, Jr. because they knew that Mr. Nelson faced a substantial risk of serious harm and they failed to take reasonable steps to avoid the harm.

87. As a proximate result of Defendant's failure to act properly as above-described, Edwin R. Nelson, Jr. suffered an injury to human dignity as previously referenced and suffered pain, distress and death as a result of the poor care and treatment given to him, allowing him to develop the injuries and suffer death as referenced herein. As such, Plaintiff has suffered, and is entitled to recover for, the following damages:

    a. Pain, suffering, inconvenience, anxiety and nervousness of the Plaintiff's Decedent until the time of his death;

  b.  Hospital, medical, surgical and nursing expenses incurred on Plaintiff's Decedent's behalf;

  c.  Attorney's fees and costs;

  d.  Other losses and damages permitted by law; and,

  e.  Any other damages as the Court sees fit to award.

WHEREFORE, Plaintiff Rosemary Nelson, as Administrator of the Estate of Edwin R. Nelson, Jr., Deceased, demands compensatory and consequential damages from Defendant Erie County, Pennsylvania in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

## COUNT IV

**Violations of the United States of America's Constitution Under Amendment Fourteen for Injury to Human Dignity Enforceable Via 42 U.S.C. §1983**

88.  All preceding paragraphs of the within Complaint are incorporated herein as if set forth more fully at length.

89.  As a proximate result of Defendant's actionable derogation of its regulatory and statutory responsibilities as above-described, Plaintiff's Decedent was injured as previously described and suffered pain, distress and death as a result of the injuries to his human dignity.

90.  As such, Plaintiff has suffered, and is entitled to recover for, the following damages, as well as an award of reasonable counsel fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988:

  a.  Money for funeral and estate expenses incurred because of the death of Edwin R. Nelson, Jr.;

  b.  Damages for the lost services, assistance, guidance, counseling, and companionship of Edwin R. Nelson, Jr.;

  c.  Financial support and all pecuniary benefits which would have been received from the Decedent;

      d.      The expenses of administration; and,

      e.      Other losses and damages permitted by law.

WHEREFORE, Plaintiff Rosemary Nelson, Individually and as Administrator of the Estate of Edwin R. Nelson, Jr., Deceased, demands compensatory and consequential damages from Defendant Erie County, Pennsylvania in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

**A JURY TRIAL IS DEMANDED.**

                                    Respectfully submitted,

                                    ROBERT PEIRCE & ASSOCIATES, P.C.

                                    By:  */s/ Allison H. Greene*
                                          ALLISON H. GREENE, ESQUIRE
                                          Pa. I.D. No.: 325648
                                          707 Grant Street, Suite 125
                                          Pittsburgh, PA 15219
                                          (412) 281-7229
                                          agreene@peircelaw.com